**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| ROBERT H. HUTCHINS,<br>18507 Bear Creek Terrace<br>Leesburg, VA 20176<br><br>and<br><br>JOHN C. KLEINERT,<br>c/o Velocity Portfolio Group<br>1800 Route 34<br>Wall, NJ 07719<br><br>*Plaintiffs*,<br><br>v.<br><br>ORBICAN SYSTEMS, INC.,<br>c/o Cogency Global Inc., Registered Agent<br>1519 York Road<br>Lutherville, MD 21093<br><br>and<br><br>GEORGE STEVEN BOVA,<br>1000 Fell Street, Apartment 212<br>Baltimore, MD 21231<br><br>*Defendants*. | ) | Civil Action No. _______________ |

**COMPLAINT**

Plaintiffs Robert H. Hutchins and John C. Kleinert, by and through undersigned counsel, bring this Complaint against Defendants Orbican Systems, Inc. and George Steven Bova, and allege as follows:

## INTRODUCTION

1. This action seeks the return of $600,000 that Plaintiffs advanced to Orbican Systems, Inc. ("Orbican") toward a proposed $3,000,000 common stock investment that never closed.

2. Under the parties' term sheet, the investment could close only after four conditions were met: mutually satisfactory due diligence, execution of definitive investment documents, approval by Orbican's board of directors, and an updated capitalization table. None of those conditions were satisfied.

3. Before Plaintiffs advanced any money, Orbican, acting through its Chief Executive Officer, Defendant George Steven Bova, agreed that it would return the $600,000 to Plaintiffs if due diligence was not satisfactory, that it would hold the funds in a separate account, and that it would disburse none of the funds without Plaintiffs' approval.

4. Due diligence was not satisfactory, and Plaintiffs accordingly notified Orbican that they would not proceed and demanded return of the $600,000. Orbican refused. It now claims that the advance bought Plaintiffs a 10% ownership interest in Orbican, even though the closing conditions were never met, the parties never signed any definitive investment documents, and the parties agreed that the $600,000 would be returned if due diligence was not satisfactory.

5. Upon information and belief, Orbican has spent approximately half of the $600,000 without Plaintiffs' approval, contrary to the parties' agreement. Defendants have also refused to account for the funds.

6. Plaintiffs bring this action to recover the $600,000 advance, obtain a declaration that the advance did not purchase an equity interest in Orbican, and hold Defendants accountable for their unauthorized use and retention of the funds. Plaintiffs also assert claims for breach of

contract, money had and received, unjust enrichment, and conversion, with their claims for money had and received and unjust enrichment pleaded in the alternative to breach of contract.

## PARTIES

7. Plaintiff Robert H. Hutchins ("Hutchins") is an individual domiciled in, and a citizen of, the Commonwealth of Virginia.

8. Plaintiff John C. Kleinert ("Kleinert") is an individual domiciled in, and a citizen of, the State of New Jersey.

9. Defendant Orbican Systems, Inc. is a Delaware corporation with its principal place of business located at 1000 Fell Street, Apartment 212, Baltimore, Maryland 21231.

10. Defendant George Steven Bova ("Bova") is an individual domiciled in, and a citizen of, the State of Maryland.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over Orbican because its principal place of business is in Maryland, and over Bova because he is domiciled in Maryland.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District.

14. Assignment to the Northern Division is appropriate under Local Rule 501.4(b)(i) because all Maryland parties reside in that Division.

## FACTUAL ALLEGATIONS

15. Orbican is a biotechnology company whose planned business concerned developing software and laboratory instruments intended to help physicians tailor cancer treatment to individual patients.

16. Bova founded Orbican in 2023 and has served at all relevant times as its Chief Executive Officer.

17. Since 2012, Bova has also been a professor at Tampere University in Finland.

18. The technology and related intellectual property at the core of Orbican's planned business were developed by Bova and his team at Tampere University, and therefore Tampere University owned them.

19. In or around early 2026, Hutchins and Bova began discussing a possible investment in Orbican.

20. During those discussions, Bova told Hutchins that Orbican could not commercialize products based on the technology unless Tampere University transferred the technology, bioinformatics, and related intellectual property to Orbican. Bova said that Tampere University would agree to that transfer only if Orbican demonstrated that it had secured investment capital.

21. Accordingly, in late January or early February 2026, following communications directly between Hutchins and Bova, Plaintiffs and Bova, on behalf of Orbican, agreed on a two-step arrangement:

(a) Plaintiffs would first advance $600,000 to Orbican so that Orbican could show Tampere University that the capital existed; and

(b) The parties would then conduct due diligence. Only if due diligence was mutually satisfactory would Plaintiffs proceed with a $3,000,000 investment in exchange for an undiluted 50% common stock interest in Orbican, with the $600,000 advance credited toward that investment.

22. Before Plaintiffs made the $600,000 advance, Bova agreed on Orbican's behalf that:

(a) If due diligence was not mutually satisfactory, Orbican would return the $600,000 to Plaintiffs;

(b) The $600,000 advance would be held in a separate, interest-bearing account, apart from Orbican's operating funds; and

(c) No funds would be disbursed from that account without Plaintiffs' prior approval.

23. These terms were essential to Plaintiffs, and Plaintiffs would not have made the $600,000 advance without them. While due diligence was pending, the advance was to be preserved in the separate account, earning interest, and available for return if the investment did not proceed.

24. In addition, Bova prepared a term sheet (the "Term Sheet") setting forth certain terms of the proposed $3,000,000 common stock investment. A copy of the Term Sheet is attached hereto as **Exhibit A**.

25. On or about February 11, 2026, Hutchins, Bova, and Antti Koskenalho ("Koskenalho"), a co-founder of Orbican, signed the Term Sheet.

26. Under the Term Sheet, Plaintiffs would acquire an undiluted 50% ownership interest in Orbican in two installments: an initial payment of $600,000 on or before February 13, 2026, followed by an additional $2,400,000 as necessary, but no later than October 31, 2026.

27. Section 2 of the Term Sheet contemplated the execution of a subscription agreement governing the issuance of common stock to Plaintiffs. It provides that "[t]he Company will issue shares proportionately based on the full amount of the subscription agreement which shall be binding with the [Plaintiffs] collectively holding 50% upon completion of the full $3,000,000 investment." Ex. A at 1.

28. Section 10 of the Term Sheet identified four closing requirements for the investment: (1) "Completion of mutually satisfactory due diligence"; (2) "Execution of definitive investment documents"; (3) "Board approval"; and (4) "Updated capitalization table." Ex. A at 3.

29. The closing conditions in Section 10 of the Term Sheet applied to the proposed $3,000,000 investment as a whole, including the initial $600,000 installment. The Term Sheet did not provide for a separate, unconditional closing of the initial installment, and Plaintiffs did not agree that the initial payment would independently purchase an equity interest in Orbican.

30. Nothing in the Term Sheet contradicts or supersedes the parties' agreements described in paragraphs 21 and 22. The Term Sheet does not address how the $600,000 advance would be held while due diligence was pending or whether it would be returned if the investment did not close.

31. Relying on the parties' agreements described in paragraphs 21-22 and 26-28, Hutchins and Kleinert each paid $300,000 to Orbican, for a total of $600,000. Hutchins's portion was wired on February 18, 2026, and Kleinert's followed a few days later.

32. Hutchins and Kleinert formed KFO Capital LLC ("KFO") to hold the Orbican shares they would have received if the investment had closed. KFO paid no part of the $600,000 advance. Because the investment never closed, Orbican never issued shares to KFO, and KFO holds no interest in Orbican or in the $600,000 advance.

33. Upon information and belief, the $600,000 was deposited into an account at Mercury Bank held in Orbican's name, and all of it was later transferred to a Treasury account (the "Treasury Account"), an interest-bearing investment account separate from Orbican's checking account.

34. Plaintiffs never received signatory authority over, or access to, the Treasury Account.

35. Before August 21, 2026, Plaintiffs never approved any disbursement of the $600,000 advance from the Treasury Account. Since that date, Plaintiffs have approved only one disbursement: payment of Koskenalho's salary for September 2026.

36. Due diligence proved unsatisfactory to Plaintiffs. As part of due diligence, Plaintiffs asked an experienced former technology company chief executive to assess Orbican's business. Between July 17 and August 18, 2026, he met with Bova four times, for more than eight hours in total, and reviewed materials Bova provided. He concluded that he could not identify Orbican's product, that he did not understand Orbican's business model, and that Orbican had no market-ready product description that a buyer or investor could understand. Accordingly, he advised that he would not invest in Orbican until these and other deficiencies were addressed.

37. Due diligence also revealed additional deficiencies. Bova demanded that, moving forward, he and Koskenalho retain complete control over Orbican – notwithstanding that the Term Sheet contemplated that Hutchins and Kleinert would control Orbican's board – and further

demanded that Orbican would convert to a public benefit corporation whose board members would take a mission-oriented oath.

38. In addition, Bova presented a financial plan under which Orbican would require approximately $25,000,000 in funding beyond the proposed $3,000,000 investment. Bova demanded that Orbican either pursue that plan or that the company be closed.

39. Based on these and other findings, Plaintiffs decided in good faith not to proceed with the investment. Accordingly, on or about August 21, 2026, Hutchins, on behalf of himself and Kleinert, notified Bova that Plaintiffs would not proceed. Plaintiffs thereafter demanded return of the $600,000 they had advanced.

40. Further, on or about August 20, 2026, Bova told Hutchins that only about half of the $600,000 advance remained in the Treasury Account. Thus, Orbican had disbursed approximately $300,000 of the advance by that date without Plaintiffs' approval, in violation of the parties' agreement.

41. Upon information and belief, Bova controlled the Treasury Account and personally authorized and directed all disbursements from that account.

42. Orbican, acting through Bova, refused to return the $600,000 advance, or even what was left of it. Instead, Orbican asserted that the initial payment had operated to acquire a 10% common stock interest in Orbican – notwithstanding the unsatisfied closing conditions and the absence of executed definitive investment documents.

43. Hutchins repeatedly requested an accounting of the Treasury Account. Bova refused. On August 31, 2026, Bova stated that Orbican would address those requests only "[i]f we proceed under the investment framework." In other words, Orbican would disclose what had become of the $600,000 only if Plaintiffs first agreed that the $600,000 had purchased equity.

44. None of the closing conditions in Section 10 of the Term Sheet were satisfied. Due diligence was not mutually satisfactory. The parties never signed a subscription agreement or other definitive investment documents. Upon information and belief, Orbican's board of directors never approved the investment. And finally, Orbican never provided Plaintiffs with an updated capitalization table reflecting the contemplated investment.

45. In addition, Orbican never furnished Plaintiffs with stock certificates, stock ledger entries, book-entry statements, or other records reflecting that Orbican shares had been issued to them.

46. Plaintiffs never waived any of the closing conditions. Those conditions remain unsatisfied, and the proposed investment never closed.

47. On September 16, 2026, Plaintiffs, through counsel, demanded that Orbican return the full $600,000 and provide a complete accounting of the funds by September 25, 2026. Plaintiffs also again directed Orbican not to transfer, spend, or otherwise dissipate any remaining portion of the $600,000.

48. The deadline passed. Orbican has returned no part of the $600,000 and has provided no accounting.

49. As a result of Defendants' conduct, Plaintiffs have been deprived of the $600,000 they advanced for a proposed investment that never closed, and Defendants continue to retain those funds without Plaintiffs' authorization and contrary to Defendants' obligation to return them.

**COUNT I**
**Declaratory Judgment, 28 U.S.C. §§ 2201-2202**
**(Against Orbican)**

50. Plaintiffs incorporate paragraphs 1 through 49 as if fully set forth herein.

51. An actual, substantial, and justiciable controversy exists between Plaintiffs and Orbican about the legal effect of the $600,000 advance. Plaintiffs contend that the advance was a conditional payment toward a proposed investment that never closed, and that Orbican must return it. Orbican contends that the $600,000 by itself purchased a 10% common stock interest in Orbican.

52. Under the Term Sheet, the proposed investment, including the initial $600,000 installment, was subject to four closing conditions: mutually satisfactory due diligence, execution of definitive investment documents, board approval, and an updated capitalization table. None of these four conditions were satisfied, and Plaintiffs did not waive any of these conditions.

53. A declaratory judgment will resolve the parties' dispute and clarify their legal relations.

54. Plaintiffs are entitled to a declaration that:

(a) the proposed investment described in the Term Sheet never closed;

(b) the $600,000 advance did not purchase any equity interest in Orbican;

(c) Orbican is obligated to return the $600,000 to Plaintiffs; and

(d) neither Plaintiffs nor any entity affiliated with them, including KFO, holds any stock or other equity interest in Orbican as a result of the $600,000 advance.

55. Plaintiffs are further entitled to such further necessary or proper relief based on that declaration as is authorized by 28 U.S.C. § 2202.

**COUNT II**
**Breach of Contract**
**(Against Orbican)**

56. Plaintiffs incorporate paragraphs 1 through 49 as if fully set forth herein.

57. Before Plaintiffs made the $600,000 advance, Plaintiffs and Orbican, acting through Bova, entered into a valid and enforceable agreement under which Orbican agreed to: (a) return the $600,000 if due diligence was not mutually satisfactory; (b) hold the $600,000 in a separate account, segregated from Orbican's operating funds; and (c) disburse no part of the $600,000 without Plaintiffs' prior approval (the "Advance Agreement").

58. The Advance Agreement was supported by consideration, including Plaintiffs' payment of $600,000 to Orbican, which enabled Orbican to show Tampere University that it had secured investment capital.

59. The Term Sheet, which Bova prepared, was consistent with the Advance Agreement. It expressly conditioned closing of the proposed investment on mutually satisfactory due diligence and did not alter Orbican's separate obligation to return the $600,000 advance if due diligence was unsatisfactory.

60. Due diligence was not mutually satisfactory, thereby triggering Orbican's obligation to return the advance.

61. Orbican materially breached the Advance Agreement by:

(a) failing and refusing to return the $600,000 advance after Plaintiffs notified it that they would not proceed and demanded repayment; and

(b) disbursing approximately $300,000 or more of the advance without Plaintiffs' approval.

62. As a direct and proximate cause of Orbican's breaches, Plaintiffs have been damaged in the amount of $600,000, plus prejudgment interest.

**COUNT III**
**Money Had and Received**
**(Against Orbican, in the Alternative to Count II)**

63. Plaintiffs incorporate paragraphs 1 through 49 as if fully set forth herein.

64. Orbican received $600,000 from Plaintiffs.

65. Plaintiffs paid the $600,000 for a specific and limited purpose: to allow Orbican to show Tampere University that it had secured investment capital while the parties conducted due diligence on a proposed investment, and in contemplation of that investment.

66. That purpose has failed. Due diligence was not satisfactory, the investment never closed, and Orbican provided Plaintiffs nothing in exchange for the $600,000.

67. Orbican has no right to retain the $600,000, which in equity and good conscience belongs to Plaintiffs.

68. Plaintiffs demanded return of the $600,000, and Orbican refused.

69. Plaintiffs are entitled to recover $600,000 from Orbican, plus prejudgment interest.

**COUNT IV**
**Unjust Enrichment**
**(Against Orbican, in the Alternative to Count II)**

70. Plaintiffs incorporate paragraphs 1 through 49 as if fully set forth herein.

71. Plaintiffs conferred a benefit on Orbican by advancing it $600,000.

72. Orbican knew of and appreciated that benefit. It accepted the $600,000, used it to demonstrate to Tampere University that it had capital, and, upon information and belief, spent part of it on its own operations and obligations.

73. Orbican has accepted and retained the advance under circumstances that make its retention inequitable without payment of its value. Plaintiffs paid the advance in contemplation

of an investment that never closed, Orbican provided nothing in exchange, and Orbican has refused both to return the funds and to account for them.

74. Equity and good conscience require Orbican to make restitution to Plaintiffs of $600,000, plus prejudgment interest.

**COUNT V**
**Conversion**
**(Against Orbican and Bova)**

75. Plaintiffs incorporate paragraphs 1 through 49 as if fully set forth herein.

76. The $600,000 advance constituted a specific, identifiable fund that Plaintiffs entrusted to Orbican for the limited purpose of demonstrating to Tampere University that Orbican had secured investment capital while the parties conducted due diligence concerning the proposed investment. The advance was not an unconditional investment in Orbican and was not intended to fund Orbican's operations before completion of due diligence.

77. Under the parties' agreement, Orbican was required to hold the $600,000 in a separate account, segregated from its operating funds, and was prohibited from disbursing any portion of the advance without Plaintiffs' prior approval. Plaintiffs retained the right to control disbursements from the account and to have the funds returned if due diligence was not satisfactory.

78. Upon information and belief, the $600,000 was ultimately deposited into the Treasury Account, an identifiable bank account held in Orbican's name. The advance was required to remain in that account, subject to Plaintiffs' approval of any disbursements, unless and until the parties proceeded with the contemplated investment or the funds became returnable under the parties' agreement.

79. Notwithstanding those restrictions, Orbican disbursed approximately $300,000 of the advance without Plaintiffs' approval and before completion of due diligence. Those disbursements were contrary to the limited purpose for which Plaintiffs had entrusted the funds to Orbican and inconsistent with Plaintiffs' right to control their disposition.

80. Upon information and belief, Bova exercised control over the Treasury Account and personally authorized and directed the unauthorized disbursements. Bova knew that Orbican was prohibited from disbursing the funds without Plaintiffs' approval because he had personally negotiated and agreed to that restriction on Orbican's behalf. Nevertheless, he caused Orbican to disburse approximately $300,000 of the advance without obtaining Plaintiffs' approval.

81. Those unauthorized disbursements constituted an exercise of dominion and control over Plaintiffs' specifically identifiable funds inconsistent with Plaintiffs' rights, and occurred independently of Orbican's subsequent refusal to return the advance.

82. When Plaintiffs notified Orbican that due diligence was not satisfactory and that they would not proceed with the investment, they became entitled to the immediate return of the $600,000. Defendants nevertheless refused to return any portion of the advance, including the funds remaining in the Treasury Account, and asserted that the advance had become Orbican's property in exchange for an equity interest.

83. Bova personally participated in the decision to retain the remaining funds notwithstanding Plaintiffs' demand for their return. Through his personal authorization and direction of the unauthorized disbursements and his participation in the continued retention of the funds, Bova personally participated in their conversion.

84. As a direct and proximate result of Defendants' conversion, Plaintiffs have been damaged in the amount of $600,000, plus prejudgment interest, for which Defendants are jointly and severally liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Robert H. Hutchins and John C. Kleinert respectfully request that the Court enter judgment in their favor and against Defendants, and grant the following relief:

A. On Count I, a declaration that (i) the proposed investment described in the Term Sheet never closed; (ii) the $600,000 advance did not purchase any equity interest in Orbican; (iii) neither Plaintiffs nor any entity affiliated with them, including KFO, holds any stock or other equity interest in Orbican as a result of the $600,000 advance; and (iv) Orbican is obligated to return the $600,000 to Plaintiffs.

B. On Count II, or alternatively on Count III or IV, judgment against Orbican in the amount of $600,000;

C. On Count V, judgment against Orbican and Bova, jointly and severally, in the amount of $600,000;

D. An Order requiring Defendants to provide a full accounting of the receipt, use, transfer, and disposition of the $600,000;

E. The imposition of a constructive trust over all remaining portions of the $600,000 and any property or proceeds traceable to it;

F. Prejudgment and post-judgment interest as permitted by law;

G. Plaintiffs' taxable costs of this action; and

H. Such other and further relief as the Court deems just and proper.

Plaintiffs seek a single recovery of the $600,000 advance and do not seek duplicative damages.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Daniel M. Moore*
Daniel M. Moore (Bar No. 21834)
SAUL EWING LLP
1001 Fleet Street, Ninth Floor
Baltimore, Maryland 21202-4359
Telephone: (410) 332-8734
Facsimile: (410) 332-8862
daniel.moore@saul.com

Ian A. McLin (*pro hac vice* forthcoming)
SAUL EWING LLP
1800 M Street, NW, Suite 1000N
Washington, DC 20036
Telephone: (202) 295-6604
Facsimile: (202) 337-6065
ian.mclin@saul.com